## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DENNIS FERRY, | : | |
| | : | |
| Plaintiff, | : | Civil. No 15-7723 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BLACK DIAMOND VIDEO, INC., a | : | |
| Corporation organized under the laws of the | : | |
| State of California; STERIS | : | |
| CORPORATION, a corporate entity; | : | |
| MERGER SUBSIDIARY CORP. (a | : | |
| fictitiously named corporate entity | : | |
| Defendant); and JOHN DOES 1–5 | : | |
| (fictitiously named Defendant), | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

This case arises from a dispute regarding a debt owed by Defendant Black Diamond Video, Inc. ("BDV") to Plaintiff Dennis Ferry ("Plaintiff" or "Ferry"). Presently before the Court is BDV and STERIS Corporation's ("Steris") (collectively, "Defendants") Motion to Dismiss ("Defendants' Motion [Dkt. No. 3]). For the reasons that follow, the Defendants' Motion will be **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Around the end of September or early October 2009, Plaintiff agreed to make a loan of $100,000.00 to BDV. (Compl. [Dkt. No. 1-1] ¶ 7.) Plaintiff and BDV memorialized the terms

of this loan in a promissory note (the "Note" [Dkt. No. 3-6]).[1]  (*Id.*)  The Note provided that BDV would repay the loan within one year, with interest at the rate of 8.5% per annum, and the term of the loan extendable by Plaintiff at three month intervals.  (Note ¶¶ 1–2, 11.)  BDV's obligations under the Note were secured by BDV's accounts receivable and inventory.  (Note ¶¶ 8–9.)  The Note included a choice of law provision, specifying that it "will be construed in accordance with and governed by the laws of the State of New Jersey."  (Note ¶ 5.)  Additionally, the Note included a provision that the legal fees and costs incurred by Plaintiff in enforcing the Note as a result of default by BDV would be added to the balance of the outstanding principal and immediately due to Plaintiff.  (Note ¶ 6.)

As is relevant to this case, the Note also included the following provision:  "Conver[t]ible into shares of class 'A' Preferred Stock of Black Diamond Video Inc. at a cost of $1.50."  (Note ¶ 10.)  Plaintiff alleges that this provision constituted a stock option/conversion right, granting Plaintiff the right to obtain Class "A" Preferred Stock of BDV at a cost of $1.50 per share up to the amount of his initial loan, regardless of the amount of debt remaining on the Note, resulting in a right to obtain up to 66,666 shares at $1.50 per share.  (Compl. ¶¶ 8b, 9–10.)  Plaintiff further alleges that "[t]he stock option/conversion right was granted to Plaintiff Ferry by Defendant Black Diamond as additional consideration, over and above the loan repayment, in order to afford Plaintiff Ferry an opportunity, in his sole and subjective discretion, to participate in any future financial success of Defendant Black Diamond."  (*Id.* ¶ 10.)  In addition, Plaintiff alleges that breach of the stock option/conversion right falls within the costs provision of the Note.  (*Id.* ¶ 8d.)

---

[1] Although not attached to the original complaint, the Complaint expressly relies upon the Note. As such, this Court may consider the Note without converting the motion into one for summary judgment.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citations omitted).

Between September 2009 and April 2015, BDV made partial repayments of the loan principal and interest, such that as of April 2015, there was a principal balance of $50,000.00. (*Id.* ¶ 12.)  During that time period, Plaintiff had several conversations with BDV's representative with respect to the conversion option, during which BDV "specifically represented that Plaintiff Ferry should wait until a sale of Defendant Black Diamond at a favorable price in order to achieve a maximum return." (*Id.* ¶ 13.)  Additionally, between August 2011 and April 2015 BDV was audited twice, and Plaintiff replied to the auditors to confirm the existence of his "stock option/conversion rights." (*Id.* ¶ 15.)

On May 14, 2015, Plaintiff received a call from BDV's Assistant Treasurer, Dimitri Cerruti. (*Id.* ¶ 18.)  Mr. Cerruti requested to confirm Plaintiff's address in order to send a check to pay the remaining balance of the note. (*Id.*)  When Plaintiff asked why the loan was suddenly being repaid in full and specifically inquired as to whether BDV was in the process of being sold or experiencing some other favorable corporate development, Mr. Cerruti did not respond. (*Id.*) Plaintiff instructed Mr. Cerruti not to send any loan repayment and advised that he would be contacting BDV's Chief Financial Officer Joseph Papa "and would be exercising the stock option/conversion if a favorable corporate opportunity was determined to exist." (*Id.*)  Plaintiff then called Mr. Papa and left three messages over the next several days which were never returned. (*Id.* ¶ 19.)

On May 15, 2015, Plaintiff received a check from BDV for the balance of the loan obligation, which he returned to BDV on May 16, 2015. (*Id.* ¶¶ 20–21.)  Over the course of the next week, Plaintiff learned that BDV was in the process of finalizing a merger with Steris, with the result that BDV stock would be valued at $4.50 per share. (*Id.* ¶ 22.)  After learning this, on May 22, 2015, Plaintiff emailed Mr. Papa and BDV's Chief Executive Officer Edward Priest

3

"which memorialized Plaintiff's earlier representation to [Mr.] Cerruti as to Plaintiff's intent to exercise his stock option/conversion rights." (*Id.* ¶ 23.)  That same day, Plaintiff discovered that BDV had taken the returned check to a Wells Fargo branch near BDV's California office and deposited the check into Plaintiff's account without his authorization.  (*Id.* ¶ 24.)

Approximately two weeks later, on June 5, 2015, Plaintiff through counsel sent Mr. Priest a letter rejected the unauthorized deposit and returning the improperly deposited amount.  (*Id.* ¶ 25.)  This letter "once again reiterated Plaintiff's intended exercise of his stock option/conversion rights" and warned of legal action.  (*Id.* ¶ 26.)  Then, on or about June 12, 2015, Steris acquired all of the outstanding stock of BDV via its fictitiously named subsidiary, Merger Subsidiary Corp.  (*Id.* ¶ 5.)

Plaintiff initially filed this action on September 17, 2015 in the Superior Court of New Jersey, Camden County, Law Division against the Defendants as well as the fictitiously named subsidiary and five John Doe defendants.  (Notice of Removal [Dkt. No. 1-2] ¶ 4.)  Defendants then timely removed the action to this Court.  (*See* Notice of Removal.)  Defendants then filed the pending motion to dismiss the seven counts of the Complaint that are asserted against them.[2] Having been briefed by the parties, Defendants' Motion is now ripe for review.

II.     **JURISDICTION**

Plaintiff brings state common law claims against Defendants.  Plaintiff is a New Jersey resident.  (Compl. ¶ 1; Notice of Removal ¶ 5.)  BDV is a California corporation with its principal place of business in California, and Steris is an Ohio corporation with its principal place of business in Ohio.  (Compl. ¶¶ 2–3; Notice of Removal ¶¶ 2–3.)  Further, Plaintiff's

---

[2] The Complaint also includes a count of tortious interference with contractual rights and a count of tortious interference with prospective economic advantage, each of which are alleged only against the five John Doe defendants.  (Compl. ¶¶ 53–64.)

allegations state that he is entitled under the contract to $100,000.00 worth of stock in BDV.
(*See generally* Compl.)  Therefore, this Court has jurisdiction pursuant to 28 U.S.C.
§ 1332(a)(1).

### III.   LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which
relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts
accept all factual allegations as true, construe the complaint in the light most favorable to the
plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff
may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)
(quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a
complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to
relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007).  It is not for courts to decide at this point whether the
moving party will succeed on the merits, but "whether they should be afforded an opportunity to
offer evidence in support of their claims."  *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215
(3d Cir. 2002).  Yet, while "detailed factual allegations" are not necessary, a "plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do."
*Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678–79.

To make this determination, a court conducts a three-part analysis.  *Santiago v.
Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the
elements a plaintiff must plead to state a claim."  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second,
the court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

## IV.    DISCUSSION

Defendants move to dismiss seven of the nine counts of the Complaint, arguing that Plaintiff misunderstands the terms of the Note, that no quasi-contract claims can proceed in light of an actual contract, and that Steris cannot have vicarious/successor liability for the conduct of BDV.  (*See generally* Defs.' Mot. Br. [Dkt. No. 3-1].)  Plaintiff accedes to the dismissal of count two for legal fraud and count nine for breach of fiduciary duty, and also to count three to the extent it claims equitable fraud, but not to the extent it claims fraudulent concealment and constructive fraud.  (Pl.'s Opp. [Dkt. No. 7] at 11–12, 18.)  For the remainder of his claims, Plaintiff maintains that he has sufficiently stated facts to bring this suit against both BDV and Steris.  (*See generally* Pl.'s Opp.)

### A.    CONTRACT CLAIMS

The first and fourth count of the Complaint assert contractual violations.  Count One is a claim for breach of contract (Compl. ¶¶ 31–34) and Count Four is a claim for breach of the covenant of good faith and fair dealing (*Id.* ¶¶ 47–52).  For the reasons that follow, Defendants' Motion will be denied as to Counts One and Four.

### 1.      Breach of Contract

In New Jersey, to prove a breach of contract, a plaintiff must prove (1) a valid contract existed; (2) defendant breached the contract; (3) plaintiff performed under the contract; and (4) plaintiff was damaged as a result of the breach.  *Reddy v. MedQuist, Inc.*, Civ. No. 06-4410 (RBK), 2009 WL 250050, at *2 (D.N.J. Jan. 29, 2009).  Defendants argue that there can be no breach because Plaintiff never exercised his right of conversion before the debt was extinguished, so there is no debt left to convert into stock.  (Defs.' Mot. Br. at 8–11.)  Plaintiff responds that the stock option/conversion right was not related to the amount of debt, and that Plaintiff was always entitled to obtain $100,000.00 worth of Class "A" Preferred Stock in BDV at $1.50 per share regardless of the amount of debt remaining.  (Pl.'s Opp. at 8–10.)

### a)      Terms of the Contract

The first issue to be addressed by the Court are the terms of the contract at issue, which is the Note.  "[T]he interpretation of contract language is a question of law."  *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210 N.J. 597, 605 (2012).  "The judicial task is simply interpretive; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves."  *Kieffer v. Best Buy*, 205 N.J. 213, 223 (2011).  As such, contract terms are given their plain and ordinary meaning unless there is specialized language peculiar to a particular trade, profession, or industry.  *Id.* (citations omitted).

The issue is here is how to interpret the meaning of the clause in the Note that Plaintiff characterizes as providing "stock option/conversion rights."  This paragraph provides, "Conver[t]ible into shares of class 'A' Preferred Stock of Black Diamond Video Inc. at a cost of $1.50." (Note ¶ 10.)  The paragraph, not being a complete sentence, is not a paragon of contract drafting, but its meaning is plain and unambiguous.  A convertible note, otherwise known as a

7

convertible debt, convertible debenture, or convertible bond, has long been known in New Jersey law. *See, e.g.*, *Cont'l Sec. Co. v. N. Sec. Co.*, 66 N.J. Eq. (21 Dickinson) 274, 275–76 (N.J. Ch. 1904) (explaining how in exercising the convertible right of the bond, the "defendant surrendered said bonds to the [debtor], and received from it the equivalent in shares of the common stock of said company issued to redeem the bonds").

The Note established Plaintiff as a creditor of BDV, owed the amount of the principal plus interest as defined by the Note, with a right to convert that holding into an equity interest in the form of Class "A" Preferred Stock at a value of $1.50 per share, regardless of how the stock would otherwise be valued. Thus, if BDV repaid none of the loan when Plaintiff sought to exercise his option, Plaintiff would be entitled to at least 66,666 shares of BDV Class "A" Preferred Stock, depending on when Plaintiff exercised his option and what interest had accrued. Conversely, if BDV repaid the loan in full before Plaintiff exercised his option, then Plaintiff would not be entitled to any shares of stock.

Plaintiff's allegations that this was an "unconditioned" option with no relation to the amount of debt remaining is belied by the plain language of the Note that states it is "Conver[t]ible." Without remaining debt, there is nothing to convert to stock. This does not make the option illusory as Plaintiff suggests. (*See* Pl.'s Opp. at 9.) This means that at any time before the debt is repaid, Plaintiff may exercise the option and convert the remaining debt into equity. Plaintiff is correct that the option could be taken away by simple repayment of the Note. (*See id.*) But again, this does not change the fact that the Note permits Plaintiff to exercise the option *before* BDV repays the Note. Plaintiff may not like how this bargain was struck, but Plaintiff needed to address that in drafting the Note. What Plaintiff alleges the Note provided, an

8

unconditioned option, is simply not present in the Note, and the Court will not make for the parties a better bargain than the one they struck.  *See Kieffer*, 205 N.J. at 223.

The Court acknowledges that Plaintiff alleges that the stock option/conversion right was consideration above the repayment of the loan, but that is a legal conclusion regarding the interpretation of the Note to which the Court attaches no value.  *See Santiago*, 629 F.3d at 130. In interpreting the Note, the Court sees nothing that would suggest "Conver[t]ible" means anything other than its plain meaning.

### b)    Remaining Debt

Having concluded that the Plaintiff was only entitled to convert debt into stock, and not entitled to an unconditional stock option by the terms of the Note, the Court must next determine whether there is any debt remaining on the Note.  Based on the facts as alleged in the Complaint, BDV offered tender of payment, which was subsequently rejected by Plaintiff.  (*See* Compl. ¶¶ 18–21, 24–25.)  Defendants claim that this is sufficient to discharge their debt, as New Jersey statutory law provides that "if tender of payment of an obligation is made and refused, as [Plaintiff] has done, the obligation is discharged."  (Defs.' Mot. Br. at 10 (citing N.J.S.A. 12A:3-603(b).)  However, Defendants have selectively read and misapplied the statutory scheme in place.

As an initial matter, Defendants incorrectly assume that the Note is governed by Article 3 of the Uniform Commercial Code ("UCC") as adopted by New Jersey.  The Note provides Plaintiff with a security interest in BDV's accounts receivable and inventory, and is payable only to Plaintiff.  (Note ¶¶ 1, 4, 8–9.)  Thus, the Note evidences a secured transaction, and as a secured transaction, the Note is actually governed by Article 9 of the UCC, the article applying to secured transactions.  *See* N.J.S.A. 12A:9-109(a)(1) ("Except as otherwise provided . . . this

9

chapter applies to . . . a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract . . . ."); N.J.S.A. 12A:3-102(b) ("If there is a conflict between this Article and Article 4 or 9, Articles 4 or 9 govern.").  Additionally, because the Note is payable only to Plaintiff, and is not payable to bearer or to order, the Note is explicitly excluded from the subject matter of Article 3.  *See* N.J.S.A. 12A:3-102(a) ("This Article applies to negotiable instruments."); N.J.S.A. 12A:3-104(a)(1) (requiring that a "negotiable instrument" be "payable to bearer or to order"); N.J.S.A. 12A:3-109 (defining "payable to bearer or to order").  *But see* N.J.S.A. 12A:3-104 cmt. 2 (explaining that Article 3 may nonetheless be applied by analogy to a non-negotiable instrument).[3]

At this procedural posture, accepting the facts alleged in the Complaint as true, the Court is compelled to conclude that BDV never paid off the Note, and that $50,000.00 in principal remains on the Note.  Plaintiff was entitled to refuse the proffered payment as he evaluated whether he would exercise his right of conversion under the Note.  Neither the Note nor principles of contract law permit BDV to force Plaintiff to accept the payment while he evaluated his option of conversion under the Note.

---

[3] Even if Article 3 applied, either directly or by analogy, Defendant has misinterpreted the statutory language.  Rejected tender only discharges the obligations of an indorser or accommodation party.  *See* N.J.S.A. 12A:3-603(b) ("If tender of payment . . . is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of *an indorser or accommodation party* having a right of recourse with respect to the obligation to which the tender relates." (emphasis added)).  An "indorser" cannot be a "maker," N.J.S.A. 12A:3-204(a) & (b), and a "maker" is one "who signs or is identified in a note as a person undertaking to pay," N.J.S.A. 12A:3-103(7), thus BDV cannot be an indorser as BDV is identified as undertaking to pay.  An "accommodation party" is defined as one who "signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument."  N.J.S.A. 12A:3-419(a).  As BDV is a direct beneficiary of the loan, BDV also cannot be an accommodation party.  Thus, discharge under N.J.S.A. 12A:3-603(b) would not have occurred.

### c)      Plaintiff's Exercise of Conversion Right

Finally, the Court must determine if Plaintiff exercised his right of conversion.  Plaintiff insists that he "sought to exercise his option *before* Defendants tendered repayment."  (Pl.'s Opp. at 10 (emphasis in original).)  But, as determined in Section IV.A.1.b., *supra*, the timing of BDV's tender is irrelevant.  As such, the Court need only assess whether Plaintiff has ever exercised his option.

Plaintiff alleges he told Mr. Cerruti when instructing BDV not to send payment of the loan that he "would be exercising the stock option/conversion *if* a favorable corporate opportunity was determined to exist."  (Compl. ¶ 18 (emphasis added).)  However, he then alleges that he later emailed and through counsel sent a letter that "reiterated Plaintiff's *intended* exercise of his stock option/conversion rights."  (*Id.* ¶ 25 (emphasis added); *see also id.* ¶ 23.)

The Court is mindful of the standard which is to be applied to a motion to dismiss that requires the Court to "construe the complaint in the light most favorable to the plaintiff." *Fowler*, 578 F.3d at 210 (quoting *Phillips*, 515 F.3d at 233).  Plaintiff's conversation with Mr. Cerruti was not an unequivocal exercise of his right of conversion, because Plaintiff could have determined that a favorable corporate opportunity did not exist, and then accepted payment of the debt as offered.  But, drawing inferences in favor of Plaintiff, his later written communications appear to be an exercise of his right of conversion under the Note.

At this stage of the case, Plaintiff has sufficiently stated a claim for a breach of contract. He has shown that there is a valid contract, that he performed under the contract by making the loan and exercising his right of conversion under the Note for the $50,000 of remaining principal debt, that BDV did not provide him with any shares of stock, and that Plaintiff has been damaged as a result by not being able to realize the increased value of $3.00 per share.  The elements for breach of contract are thus met, and Defendants' Motion will be denied as to this claim.

### 2.      Breach of the Implied Covenant of Good Faith and Fair Dealing

Every contract in New Jersey also contains an implied covenant of good faith and fair dealing. *Brunswick Hills Racquet Club, Inc v. Route 18 Shopping Ctr. Assoc.*, 182 N.J. 210, 224 (2005) (citations omitted).  "In order to state a claim for breach of the implied covenant, a plaintiff must allege that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract unless excused; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm."  *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, Civ. No. 12-3355 (RBK), 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) (citations and modifications omitted).  "However, a '[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim."  *Id.* (citing *Hahn v. OnBoard LLC*, Civ. No. 09-3639 (DRD), 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009).

Defendants submit that no breach of the covenant could have occurred for the same reason that no breach of the contract could have occurred.  (Defs.' Mot. Br. at 11–13; Defs.' Reply at 5–6.)  Plaintiff counters that this argument fails for the same reasons a breach of contract does exist.  (Pl.'s Opp. at 10–11.)

The Supreme Court of New Jersey has recognized some guiding principles for cases dealing with covenant of good faith and fair dealing:

> A defendant may be liable for breach of the covenant of good faith and fair dealing even if it does not "violat[e] an express term of a contract."  *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 423 (2005).  A plaintiff may be entitled to relief under the covenant if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose.  *Wilson v. Amerada Hess Corp.*,

168 N.J. 236, 251 (2001).  Moreover, a plaintiff may get relief if it relies to its detriment on a defendant's intentional misleading assertions.  *Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129–30 (1976).

*Brunswick Hills*, 182 N.J. at 226.

In *Bak-A-Lum*, the plaintiff was an exclusive distributor of aluminum for Alcoa in northern New Jersey, and undertook a major expansion of its warehouse facilities in view of its success as the exclusive distributor.  69 N.J. at 126–27.  However, a few months prior, Alcoa had decided to add four additional distributors in northern New Jersey, but did not inform the plaintiff of this decision.  *Id.* at 127–28.  The Supreme Court affirmed the trial court's determination that "defendant's selfish withholding from plaintiff of its intention seriously to impair its distributorship although knowing plaintiff was embarking on an investment substantially predicated upon its continuation constituted a breach of the implied covenant of dealing in good faith.  *Id.* at 130.  Similarly, in *Brunswick Hills*, the defendant "withheld vital information from plaintiff with the purpose of exploiting the terms of the contract without regard to the harm caused to plaintiff."  182 N.J. at 227.

Turning to the facts alleged in the Complaint, the Court finds that Plaintiff has sufficiently stated a breach of the implied covenant of good faith and fair dealing.  The opinions in *Bak-A-Lum* and *Brunswick Hills* are instructive in this instance.  BDV refused to answer Plaintiff's inquiries into its ongoing business practices, knowing that Plaintiff's exercise of his right of conversion turned on whether there was a favorable corporate development.  Further, in an attempt to extinguish its debt and preclude Plaintiff from exercising his right of conversion, BDV deposited a check into Plaintiff's account *without* Plaintiff's authorization.  Even though Plaintiff could have exercised his right of conversion without the information requested, BDV's conduct in refusing to provide the information when requested multiple times and effecting an

unauthorized deposit raise concerns to this Court.  At this procedural stage, accepting the facts in the Complaint as true and drawing all inferences in favor of the Plaintiff, the Complaint states a claim for a breach of the implied covenant of good faith and fair dealing, separate and apart from the claim for breach of contract.  Accordingly, Defendants' Motion will be denied as to this count.

### B.      FRAUD CLAIMS

Although Plaintiff consented to withdraw Count Three as it related to equitable fraud, Plaintiff maintains the Complaint adequately states a claim for fraudulent concealment and constructive fraud.  (Pl.'s Opp. at 11–14.)  Defendants maintain it does not.  (Defs.' Mot. Br. at 18–21; Defs.' Reply [Dkt. No. 8] at 6–10.)  As will be explained, Defendants' Motion will be granted with respect to the fraud claims.

#### 1.      Fraudulent Concealment

Plaintiff's claim of fraudulent concealment is predicated on an alleged "duty to disclose based on the contractual relationship between the parties."  (Compl. ¶ 42.)  "Silence in the face of a duty to disclose may constitute a fraudulent concealment."  *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997) (citing *Strawn v. Canuso*, 140 N.J. 43, 56 (1995), *superseded on other grounds by*, Disclosure Act, L. 1995, c. 253 § 10, codified at N.J.S.A. 46:3C-10).  "There are three general classes in which a duty to disclose arises."  *Id.* (citation omitted).  Of relevance here is the second type of situation, where "either one or each of the parties in entering the transaction, expressly reposes a trust and confidence in the other or because of the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence is necessarily implied."  *Id.* (internal quotations and

modifications) (citing *Berman v. Gurwicz*, 189 N.J. Super. 89, 93–94 (Ch. Div. 1981), *aff'd* 189 N.J. Super. 49 (App. Div. 1983)).[4]

"The question of whether a duty exists is a matter of law.  The question is one of fairness and policy that 'involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Id.* (quoting *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993)) (other citations omitted).

Defendants assert that "[t]he debtor-creditor relationship which existed between [Plaintiff] and BDV by virtue of the Note was not one of 'trust and confidence.'"  (Defs.' Mot. Br. at 21.)  Plaintiff argues that the issue of whether a duty exists is so fact sensitive under the standard from *United Jersey*, that it is inappropriate to raise it at the motion to dismiss stage, "once Plaintiff is determined to have asserted the fundamental components of the cause of action."  (Pl.'s Opp. at 12–13.)  Plaintiff's argument misses the point.  The existence of a duty is indeed one of the fundamental components of the cause of action; there can be no fraudulent concealment if there is no duty.  Further, it is directly contrary to the holding of *United Jersey* that determining whether the duty exists is a matter of law.  *See United Jersey*, 306 N.J. Super. at 551.

In fleshing out what constitutes a relationship of "trust and confidence" such that a duty is imposed, the court in *United Jersey* adopted a comment to the Restatement (Second) of Torts § 551(2) (1977 & Supp. 1997) which explained that a duty should be imposed where "the advantage taken of the plaintiff's ignorance is 'so shocking to the ethical sense of the

---

[4] Defendants direct a fair amount of briefing to establishing that there is no fiduciary relationship, a point which Plaintiff has conceded.  (*See* Pl.'s Opp. at 11–12, 18.)  Thus, the Court need not evaluate that argument.

15

community, and is so extreme and unfair, as to amount to a form of swindling.'"  *Id.* at 554.

Other courts of this district have relied on this standard in evaluating whether to impose a duty to

disclose based on a relationship of "trust and confidence."  *See, e.g.*, *Bank of Am., N.A. v.*

*Westheimer*, Civ. No. 12-7080 (JAP), 2014 WL 809207, at *5 (D.N.J. Feb. 28, 2014), *appeal*

*argued*, No. 14-4765 (3d Cir. Apr. 19, 2016); *City of Millville v. Rock*, 683 F. Supp. 2d 319,

331–33 (D.N.J. 2010); *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450,

477–78 (D.N.J. 1998).

     The Court does not find the facts alleged in the complaint to rise to the level of

"swindling" that the court in *United Jersey* warned of.  The parties were engaged in a debtor-

creditor relationship, which is expressly one where there is no fiduciary duty, as the parties both

agree.  *See City of Millville*, 683 F. Supp. 2d at 330 ("Traditionally, a fiduciary relationship does

not exist in creditor-debtor relationships because their interests are adversarial in nature.")

(citation omitted).  Further, Plaintiff could have exercised his right of conversion at any time,

regardless of information given by Defendants.  Additionally, as Plaintiff has pleaded, he was

able to ascertain from sources other than Defendants that BDV was engaged in merger

discussions.  Thus, the information was equally available to both parties.  Although bound by the

duty of good faith and fair dealing, and the Court has found that the Complaint states a claim

with respect to that claim as discussed in Section IV.A.2, *supra*, that duty is not the same as a

duty to disclose.  The Court will not impose a duty to disclose in these circumstances, and

without a duty, there can be no fraudulent concealment.  As such, Defendants' Motion will be

granted with respect to the claim of fraudulent concealment.

## 2.     Constructive Fraud

"[C]onstructive fraud is not fraud at all but is descriptive of conduct which may in the eyes of the law give rise to certain consequences [e]nsuing upon actual fraud." *Foont-Freedenfeld Corp. v. Electro-Protective Corp.*, 126 N.J. Super. 254, 256–57 (App. Div. 1973) (quoting *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc.*, 31 N.J. 124, 136 (1959)) (internal quotation marks omitted), *aff'd* 64 N.J. 197 (1974).

However, it is not clear to the Court that a claim of "constructive fraud" is actually different from a claim of "equitable fraud."  The court in *Foont-Freedenfeld* after making the above-quoted statement then went on to discuss concepts of equitable fraud.  This issue has been noted by at least one trial court in New Jersey, albeit in an unpublished opinion.  *See Bondi v. Citigroup, Inc.*, No. BER-L-10902-04, 2005 WL 975856, at *17 (N.J. Super. Ct. Law Div. Feb. 28, 2005) (expressing doubt that "constructive fraud" is different from "equitable fraud").  Even relying on the treatises cited by Plaintiff in his opposition, the terms "constructive fraud" and "equitable fraud" appear to be interchangeable.  *See* 3 John Norton Pomeroy, *Treatise on Equity Jurisprudence as Administered in the United States* § 922 n.1 (5th ed. 1941) ("The phrase 'constructive fraud' or 'equitable fraud' has been constantly used by courts from the earliest day . . . ."); *Fraud*, *Black's Law Dictionary* (10th ed. 2014) (referring back to "constructive fraud" in defining "equitable fraud").

Plaintiff has not cited to a single case where a court has found constructive fraud under analogous facts as alleged in the Complaint.  Plaintiff rather just asserts that constructive fraud exists as a separate theory of recovery and again asserts that "[t]he determination of the legal merits thereof is not appropriate in a 12(b)(6) motion context."  (Pl.'s Opp. at 14.)  There is no conduct pleaded in Plaintiff's complaint that would give rise to a claim for constructive fraud as it related to BDV failing to disclose a pending merger, and Plaintiff has conceded that he has no

claim for equitable fraud, either.  Accordingly, Defendants' Motion will be granted with respect to this claim.

### C.       QUASI-CONTRACT CLAIMS

The Complaint also alleges in Count Seven a claim for promissory estoppel (Compl. ¶¶ 65–70) and in Count Eight a claim for equitable estoppel/estoppel in pais (Compl. ¶¶ 71–76). "[U]nder New Jersey law, liability based on quasi-contractual principles cannot be imposed 'if an express contract exists concerning the identical matter.'" *Freightmaster USA, LLC v. Fedex, Inc.*, Civ. No. 14-3229 (KSH/CLW), 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015) (quoting *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir. 1983)).  In order to plead in the alternative, as permitted by Federal Rule of Civil Procedure 8(d)(2), a plaintiff must allege that the contract was invalid or that the conduct complained of is outside of the contract.  *Id.*  (citing *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 734 (D.N.J. 2008)).

The Complaint contains no allegations that the Note is invalid, neither does it contain allegations that the conduct complained of is not covered by the Note.  To the contrary, Plaintiff alleges that the Note specifically provided for an unconditional stock option that permitted him to purchase BDV preferred stock at a price of $1.50 per share up to the amount of his original investment.  (*See* Compl. ¶¶ 8–10).  However, out of an abundance of caution, the Court will proceed to analyze both the promissory estoppel claim and equitable estoppel claim on the merits.

### 1.       Promissory Estoppel

Under New Jersey law, "[p]romissory estoppel is made up of four elements:  (1) a clear and definite promise; (2) made with the expectations that the promisee will rely on it; (3)

reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cty. of Burlington*, 194 N.J. 223, 253 (2008) (citation omitted). "Indefinite promises or promises subject to change by the promisor are not 'clear and definite' and cannot give rise to a claim for promissory estoppel." *Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002); *see also Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 479 (App. Div. 1978) ("[T]he 'clear and definite promise' [is] the *sine qua non* for applicability of [promissory estoppel].").

Plaintiff appears to be relying on two alleged promises. The first is the alleged unconditional stock option right, and the second is the representations from BDV representatives who told Plaintiff to delay conversion until a sale of BDV stock at a favorable price and never told him that the stock option rights were tied to the remaining debt. (Pl.'s Opp. at 15–16.) Neither of these evidences a "clear and definite" promise made to Plaintiff.

Plaintiff's misunderstanding of the contractual language in the Note, as discussed in Section IV.A.1.a, *supra*, does not convert his own legal conclusion into a promise made by BDV. Similarly, BDV was under no obligation to clarify to Plaintiff the plain meaning of the contractual language. Plaintiff takes issue with the fact that "[a]t no time during the course of these conversations [regarding the stock option/conversion right] did Defendant Black Diamond indicate that the value of the stock option/conversion grant would be restrict and/or diminished by Defendant Black Diamond's partial loan repayments." (Compl. ¶ 13.) But BDV did not need to explain that to Plaintiff; the Note sufficiently explained that the right was one of *conversion*, and that if there were no more debt, there was nothing more to convert. The fact that BDV then "represented that Plaintiff Ferry should wait until a sale of Defendant Black Diamond at a favorable price in order to achieve a maximum return," (*id.*) also is not evidence of a promise.

19

Even assuming this was a misrepresentation, courts of this district have made clear that "many alleged misrepresentations" do not equate to "a concrete promise." *Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 622 (D.N.J. 1999).

Even taking the evidence in the light most favorable to the Plaintiff, as this Court must do, there are no allegations supporting a clear and definite promise made to Plaintiff that he would be able to obtain $100,000.00 worth of BDV preferred stock at $1.50 per share whenever he wanted. Accordingly, there is no claim for promissory estoppel, and Defendants' Motion will be granted with respect to this claim.

### 2.  Equitable Estoppel / Estoppel in *Pais*

To establish a claim of equitable estoppel in New Jersey, a plaintiff must demonstrate that (1) a defendant "engaged in conduct, either intentionally or under circumstances that induced reliance;" and (2) the plaintiff "acted or changed [her] position to [her] detriment." *Knorr v. Smeal*, 178 N.J. 169, 178 (2003) (citing *Miller v. Miller*, 97 N.J. 154, 163 (1984)). "The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." *Id.* (citing *Mattia v. N. Ins. Co. of N.Y.*, 35 N.J. Super. 503, 510 (App. Div. 1955)). "Equitable estoppel is applied only in very compelling circumstances, where the interests of justice, morality and common fairness clearly dictate that course." *Segal v. Lynch*, 211 N.J. 230, 270 (2012) (citing *Knorr*, 178 N.J. at 178) (internal quotation marks and modifications omitted).

Plaintiff complains of three instances of conduct: (1) the promise of the unconditional stock option; (2) the inducement to wait until BDV was sold to exercise the stock option; and (3) the concealment of the proposed merger and forced attempt to extinguish the debt. (Pl.'s Opp. at 16–17.) As discussed above, the first instance was not a promise and Defendants cannot

be said to be changing their course of conduct with respect to the stock option. *See* Section IV.C.1, *supra*.

With respect to the latter two instances of conduct, to the extent they could present a claim of equitable estoppel, the claim is encompassed by the claim for breach of the implied covenant of good faith and fear dealing. Indeed, Plaintiff's argument that he relied on these two instances of conduct in not exercising his stock option/conversion right mirrors Plaintiff's argument for why BDV's conduct was a breach of the implied covenant of good faith and fair dealing. In addition, the inducement to wait until BDV was sold is only problematic under Plaintiff's idiosyncratic view of the stock option/conversion right. The Court does not find that these are "very compelling circumstances." Plaintiff has not presented sufficient allegations to state a claim of equitable estoppel, and as such, Defendants' Motion will be granted with respect to this claim.

### D.   VICARIOUS/SUCCESSOR LIABILITY OF STERIS

The Complaint also asserts liability against Steris for all the conduct of BDV on a theory of vicarious liability. (*See* Compl. ¶ 5.) For each of the seven counts of the Complaint subject to this motion to dismiss, there is an allegation that "Defendants Steris Corp. and Merger Subsidiary Corp. are responsible and liable to Plaintiff for all of the obligations of Defendant Black Diamond under a theory of vicarious/successor liability and as a result of the corporate merger between Defendants." (*E.g.*, Compl. ¶ 34.) Defendants challenge this on the grounds that Plaintiff has insufficiently pled all of the elements of successor liability. (Defs.' Mot. Br. at 30–33.)

New Jersey has a general rule of successor non-liability. *See Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 340 (1981) ("The general principle has been accepted in New Jersey that where

one company sells or otherwise transfers all its assets to another company the latter is *not* liable for the debts and liabilities of the transferor." (emphasis added)).  There are then four limited exceptions to this rule for when one corporation succeeds to the liabilities of another:  "(i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (ii) the purchase is a de facto consolidation or merger; (iii) the purchaser is a mere continuation of the seller; or (iv) the transfer of assets is for the fraudulent purpose of escaping liability." *Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs., Inc. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 624–25 (D.N.J. 2004) (citations omitted).  "[W]here a corporation acquires the stock of another corporation and the target corporation continues to operate as a separate corporate entity, the purchaser corporation does not thereby assume the liabilities of the acquired corporation unless it does so expressly."  *Id.* at 625 (citations omitted).

Here, there are allegations that BDV is still a separate corporation from Steris, incorporated in a different state than Steris, and with a different principal place of business from Steris.  (*See* Compl. ¶¶ 2–3.)  The Complaint does not allege that Steris expressly assumed the liabilities of BDV, nor does the Complaint allege any other basis for finding successor liability. Plaintiff's arguments opposing dismissal on this basis are inapposite and fail to address the issues raised by Defendants.  Accordingly, Defendants' Motion will be granted with respect to the vicarious liability for Steris.  Because there are no independent allegations of wrongdoing on behalf of Steris or any remaining theories of liability pled that would make Steris independently liable, Steris will be dismissed as a party from this action.[5]

_____

[5] Defendants also assert in a footnote that Ohio law may govern this issue because Steris is an Ohio corporation, but provide no choice of law argument or analysis, and argue this issue almost exclusively under New Jersey law.  (Defs.' Mot. Br. at 31 n.11.)  Plaintiff does not respond to the choice of law issue.  (*See* Pl.'s Opp. at 18–19.)  The Court need not further address this, as (continued)

## V.      CONCLUSION

For the foregoing reasons, the Defendants' Motion will be granted-in-part with respect to Counts Two, Three, Seven, Eight, and Nine, and otherwise denied.  The Complaint will be dismissed with respect to the same counts, without prejudice.  Additionally, Defendant STERIS Corporation will be dismissed as a party to this action.  As the dismissal is without prejudice, Plaintiff will be given fourteen (14) days from the entry of the accompanying order to file a motion to amend the complaint.  An appropriate order accompanies this opinion.


Date:  June   13th   , 2016


                                                    s/ Robert B. Kugler
                                                   ROBERT B. KUGLER, U.S.D.J.

---

(continued)
"arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (citation omitted).  *United States v. Centeno*, 793 F.3d 378.  However, reviewing the limited citations provided to Ohio law, the Court notes that to the extent Ohio law may govern this issue, the result under Ohio law would be the same.  *See Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 617 N.E.2d 1129 (1991) (providing the identical four exceptions to successor liability and finding the continued existence of the target corporation dispositive in defeating an argument for a de facto merger).